WHITE & CASE LLP
1155 Avenue of the Americas
New York, New York 10036-2787
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
Abraham L. Zylberberg
Evan C. Hollander
Richard A. Graham

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re | ) | Chapter 15 |
| JSC Alliance Bank, | ) | Case No. 10-10761 (JMP) |
| Debtor in a Foreign Proceeding. | ) | |

## APPLICATION FOR ORDER SCHEDULING HEARING AND SPECIFYING THE FORM AND MANNER OF SERVICE OF NOTICE

Petitioner, Maxat Rakhimzhanovich Kabashev (the "Petitioner"), as the duly authorized foreign representative of JSC Alliance Bank (the "Bank," or "Debtor"), the debtor in a voluntary restructuring proceeding currently pending in the Republic of Kazakhstan (the "Kazakh Proceeding"), by and through his undersigned counsel, respectfully submits this application (the "Application") for entry of an order (i) scheduling a hearing on the relief sought in the Verified Petition for Recognition of Foreign Main Proceeding and Request for Related Relief (the "Petition"), filed on February 16, 2010, and (ii) specifying the form and manner of service of notice thereof. In support of the Application, the Petitioner respectfully represents as follows:

### BACKGROUND

A. **The Bank and the Foreign Representative**

2. The Bank was incorporated under the laws of the Republic of Kazakhstan on 14 May 1993 as an open joint stock company under the name IrtyshBusinessBank OJSC. Since

then, it has operated as a bank, accepting deposits and making loans. In 1999, IrtyshBusinessBank OJSC merged with Semipalatinsk City Bank, another regional bank which was based in Eastern Kazakhstan. The combined bank primarily served large industrial enterprises in the Eastern Kazakhstan and Pavlodar regions.

3. In October 2001 a consortium of Kazakhstan companies led by Seimar Alliance Financial Corporation acquired 64% of the issued shares in the Bank. Following the completion of this transaction, the Bank changed its name to JSC Alliance Bank.

4. The Bank's banking license number is 250, dated 26 December 2007, and its registration number with the Ministry of Justice is 4241-1900-AO, dated 13 March 2004. The registered office of the Bank and its principal place of business, in the sense of decision-making and other head office functions, are located at 50, Furmanov Street, Almaty 050004, Republic of Kazakhstan.

5. The Petitioner is the Chairman of the Bank's Management Board. He was duly appointed as foreign representative of the Bank pursuant to a 18 September 2009 decision (the "Kazakh Decision") of the Specialized Financial Court of Almaty City (the "Financial Court") and specifically authorized to act in restructuring-related proceedings concerning the Bank outside Kazakhstan, including proceedings concerning the recognition of the Kazakh Proceeding and of his appointment in it.[1]

### B. The Kazakh Proceeding

6. The Bank made an application for restructuring under the Civil Procedural Code, the Banking Law and the Amending Law (each used herein throughout as defined in the Declaration of Yuriy Vladimirovich Maltsev Pursuant to 28 U.S.C. § 1746 (the "Maltsev

---

[1] A true and correct copy of the Kazakh Decision is attached as Exhibit "A" to the Declaration of Maxat Rakhimzhanovich Kabashev pursuant to 28 U.S.C. § 1746 (the "Kabashev Declaration"). An English translation of the Decision is attached as Exhibit "B" to the Kabashev Declaration.

Declaration")) on 10 September 2009, which was docketed on 11 September 2009. Pursuant to the Kazakh Decision, the application was granted by the Financial Court on 18 September 2009. This decision resulted in an automatic stay of all relevant claims of the Bank's creditors and protection of the Bank's property from execution and attachment until completion of the Restructuring.

7. On 19 November 2009 the Bank obtained an order of the Financial Court (the "November Order"), which slightly modified the terms of the Kazakh Decision by extending certain deadlines in relation to the Restructuring. A copy of the November Order is annexed to the Kabashev Declaration as Exhibit C, and an English translation thereof is attached to the Kabashev Declaration as Exhibit D.

C. **The Bank's Business**

8. The Bank, together with its subsidiary companies, is known as the "Alliance Bank Group."[2]

9. The Bank has no branch or agency in the United States. The Bank's only assets in the United States are certain correspondent accounts with US banks.

10. Substantially all the Bank's operations are in the Republic of Kazakhstan, where, as of 30 June 2009, it maintained 137 branches (including cash offices) and 1084 ATMs. As of 5 November 2009, the Bank was the sixth largest bank in Kazakhstan, as measured by total net loans. As of 30 June 2009 the Bank's net assets constituted 4.9 % of the total assets of the banking system in Kazakhstan. As of 30 June 2009, the Bank had 3,907 employees, all within Kazakhstan. Most of the Bank's directors and executive officers reside in Kazakhstan.

---

[2] The Bank's (wholly-owned) subsidiaries are ALB Finance B.V., which operates in the Netherlands, and Alliance Finance LLC, which operates in the Russian Federation. Both were established primarily to raise funds for the group in international capital markets. Neither is a debtor in the Kazakh Proceeding or seeks chapter 15 relief.

11. Most of the Bank's assets are concentrated in Kazakhstan (approx. 68% by value as of 31 December 2009).

D. **Recent Financial Difficulties**

12. During the period 2004 – 2007 the Bank expanded rapidly, primarily funded by short- and medium-term bank borrowings and debt securities issued in the international capital markets. The Bank experienced severe liquidity difficulties as a result of the world-wide financial crisis which began in the middle of 2007 and also faced a serious deterioration in the quality of its loan portfolio as the Republic of Kazakhstan's economic growth slowed.

13. On 19 March 2007 the Bank and Calyon Bank, as investment agent, entered into an Islamic financing agreement (the "Master Murabaha Agreement"), which provided the Bank with financing of US$150 million.

14. Following a recapitalization backed by the government of the Republic of Kazakhstan in late 2008 and early 2009, as well as a due diligence process initiated by a new management team in 2009, additional provisions against guarantees and loan losses were put in place by the Bank.

15. Due to a lack of funds, the Bank was unable to settle a payment demand under the Master Murabaha Agreement within 7 days of 19 March 2009, and a payment default occurred thereunder. Subsequently, the Bank was also unable to fulfill its obligations to repay creditors under other agreements. This inability to pay its debts as they fell due formed the basis for the Bank's application to the Financial Court for restructuring (as described in more detail below).

16. In April 2009 the Bank suspended the repayment of all outstanding principal amounts under its obligations but continued servicing interest. Around the same time, the Bank breached the capital adequacy and liquidity requirements of one of its principal

regulators, the Agency of the Republic of Kazakhstan for Regulation and Supervision of Financial Markets and Financial Organizations (the "FMSA").

17. In light of the foregoing, the Bank agreed with the FMSA to initiate negotiations with its creditors and entered into an agreement with the FMSA in April 2009 (as amended, the "FMSA Agreement") concerning the restructuring of the Bank (the "Restructuring"). The FMSA Agreement imposed certain restrictions on the Bank, and the Bank agreed to develop and present to the FMSA an indicative restructuring and recapitalization plan (the "Indicative Restructuring Plan") by 15 July 2009.

18. Following negotiations with a steering committee comprised of certain financial creditors of the Bank (the "Steering Committee")[3] in April and May 2009, the Bank and the Steering Committee signed a Memorandum of Understanding with respect to the Restructuring on 6 July 2009.

19. On 14 July 2009, the Bank submitted the Indicative Restructuring Plan to the FMSA in accordance with the FMSA Agreement. The FMSA approved the Indicative Restructuring Plan on 21 July 2009.

20. As noted above, the Bank made an application for restructuring under the Civil Procedural Code, the Banking Law and the Amending Law on 10 September 2009, which was docketed on 11 September 2009, and on 18 September 2009 the Financial Court issued the Kazakh Decision, granting the application, commencing the Kazakh Proceeding and appointing the Petitioner as the foreign representative of the Bank.

---

[3] The Steering Committee members are Asian Development Bank, Calyon, Commerzbank Aktiengesellschaft, DEG – Deutsche Investitions- und Entwicklungsgesellschaft mbH, HSBC Bank plc, ING Asia Private Bank Limited, JPMorgan Chase Bank, N.A., Sumitomo Mitsui Banking Corporation Europe Limited and Wachovia Bank N.A.

21. As part of the Kazakh Decision (as modified by the November Order), the Financial Court ordered that:

   a) the restructuring of the Bank must be completed by no later than 15 March 2010;

   b) the Petitioner should be responsible for conducting the Restructuring;

   c) the proceeding should be recognized as a judicial proceeding conducted in accordance with the insolvency legislation of the Republic of Kazakhstan in which the Bank's activity is subject to supervision by the FMSA;

   d) the Bank should undertake various actions to notify and inform its creditors in relation to steps to be taken pursuant to the Restructuring, including publishing an information memorandum; and

   e) previous court decisions regarding claims against the Bank should be suspended.

22. On 5 October 2009 the Bank and the Steering Committee signed a term sheet setting out key commercial terms of the Restructuring and of the Bank's corporate governance and other aspects of its operations and business following the Restructuring.

23. Pursuant to the order of the Financial Court, the Bank distributed by publishing on its web site an information memorandum dated 5 November 2009, a copy of which is annexed as Exhibit E to the Kabashev Declaration, as supplemented by a supplemental information memorandum dated 24 November 2009, a copy of which is annexed as Exhibit F to the Kabashev Declaration (together, the "Information Memorandum"). The Information Memorandum contains the definitive restructuring plan (the "Restructuring Plan").

24. The Restructuring Plan was approved at a meeting held on 15 December 2009 by creditors holding over 94% in amount of the claims against the Bank that are being restructured.

25. On 20 December 2009 the Restructuring Plan approved at the creditors' meeting was delivered to the FMSA for its review.

26. Pursuant to Resolution No. 268 adopted on 30 December 2009 by the FMSA, the entire issued share capital of the Bank was compulsorily acquired by the FMSA and transferred to the JSC National Welfare Fund Samruk-Kazyna ("Samruk-Kazyna"), which is wholly-owned by the Republic of Kazakhstan. Accordingly, the Bank is now wholly-owned by Samruk-Kazyna. The FMSA undertook this action pursuant to the Banking Law primarily as a result of the Bank's negative equity capital position and its failure to comply with prudential requirements, which were not cured within the time period allowed under Kazakhstan legislation.

27. On 1 February 2010 the FMSA approved the Restructuring Plan. The Restructuring Plan was submitted to the Financial Court for its approval on 3 February 2010. A hearing before the Financial Court is expected to occur on 26 February 2010. All claimants are entitled to appear at that hearing.

28. The Restructuring Plan covers over US$ 5 billion of the Bank's financial indebtedness.

## JURISDICTION AND VENUE

29. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157. Venue is proper before this Court pursuant to 28 U.S.C. § 1410.

## RELIEF REQUESTED

30. Petitioner seeks entry of an order, substantially in the form attached hereto as Exhibit A, (i) setting 9 March 2010, or as soon thereafter as the Court's calendar permits, as the date (the "Recognition Hearing Date") for the hearing (the "Recognition Hearing") on the relief sought in the Petition, (ii) setting 4:00 p.m. (New York Time) on 8 March 2010 as the deadline by which any responses or objections to the Petition must be received; (iii) approving the form of notice of the Recognition Hearing Date (the "Notice") that is attached hereto at Exhibit B; and (iv) approving the manner of service of the Notice described herein.

## BASIS FOR RELIEF

31. Bankruptcy Rule 2002(q)(1) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") provides that the parties identified therein (the "Chapter 15 Notice Parties") must be given at least 21 days' notice of a hearing to consider the petition for recognition of a foreign proceeding. Fed. R. Bankr. P. 2002(q)(1). Bankruptcy Rules 2002(m) and 9007, in turn, provide, among other things, that when notice is to be given under the Bankruptcy Rules, the presiding court shall designate the form and manner in which such notice shall be given (provided the Bankruptcy Rules do not otherwise specify the appropriate form and manner of such notice). Fed. R. Bankr. P. 2002(m) and 9007.

32. Although Bankruptcy Rule 2002(q) provides that the Chapter 15 Notice Parties must receive at least 21 days' notice by mail of the hearing on the petition for recognition of a foreign proceeding, it fails to specify the form and manner in which such notice must be given. Therefore, pursuant to Bankruptcy Rules 2002(m) and 9007, this Court may specify such form and manner of notice. The Petitioner respectfully submits that service of (i) the Notice, (ii) the Official Form Chapter 15 Petition and (iii) the Petition (including the proposed order to the Petition) (collectively, the "Notice Documents"), by United States mail, first-class postage prepaid, upon the Chapter 15 Notice Parties in accordance with Bankruptcy Rule 2002(q) on or before 17 February 2010 constitutes adequate and sufficient notice of this chapter 15 case and the relief sought in the Petition. Accordingly, the Petitioner respectfully requests that this Court approve the foregoing manner of service of the Notice Documents pursuant to Bankruptcy Rules 2002(m) and 9007 and Bankruptcy Rule 2002(q).

33. Bankruptcy Rule 1011(b) provides, among other things, that a party objecting to a petition filed to commence an ancillary proceeding under chapter 15 of the Bankruptcy Code has 21 days from the date of service of the petition to respond to such petition. Fed. R. Bankr. P.

1011(b). In light of this requirement, the Petitioner respectfully submits that setting (i) 9 March 2010 (or as soon thereafter as the Court's calendar permits) as the Recognition Hearing Date and (ii) 8 March 2010 as the Objection Deadline is appropriate.

34. Section 1514(c) of the Bankruptcy Code provides that when notification of the commencement of a case is to be given to foreign creditors, such notification shall, *inter alia*, indicate the time period for filing proofs of claim, specify the place for filing such proofs of claim and indicate whether secured creditors need to file proofs of claim. 11 U.S.C. § 1514(c). It is not clear, however, that section 1514 applies in the context of an ancillary case under chapter 15. As explained in Collier on Bankruptcy, section 1514 is the "last in a series of sections dealing with the international aspects of cases under chapters *other than chapter 15* that began with section 1511." 8 Collier on Bankruptcy, 1514.01 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev. 2008) (emphasis added). Given that section 1514(c) does not appear to apply in this chapter 15 case (as Petitioner has not sought to commence a case under any other chapter of the Bankruptcy Code), the Petitioner respectfully requests that the requirements contained therein be waived in this instance.

## NO PRIOR REQUEST

35. No previous request for the relief requested herein has been made to this or any other court.

WHEREFORE, the Petitioner respectfully requests that this Court enter an order

(i) granting the relief requested herein and (ii) granting the Debtor such other and further relief as the Court deems proper and just.

Dated: New York, New York
February 17, 2010

          WHITE & CASE LLP

          By: /s/ Evan C. Hollander

          1155 Avenue of the Americas
          New York, New York 10036-2787
          Telephone: (212) 819-8200
          Facsimile: (212) 354-8113
          Abraham L. Zylberberg
          Evan C. Hollander
          Richard A. Graham

          Attorneys for Maxat Rakhimzhanovich Kabashev as Foreign Representative of JSC Alliance Bank